HAMILTON NATIONAL BANK OF CHATTANOOGA v. HAMILTON TRUST & SAVINGS BANK, et al.

Eastern Section.    May 22, 1926.

Petition for Certiorari denied by Supreme Court.    October 16, 1926.

1. **Principal and surety.**  An indemnity or collateral security given by the debtor to his surety enures to the benefit of the creditor.

   Where a battery company gave a deed of trust on its property to its surety upon its notes to secure him against the payment of said notes and where the company had given notes to two creditors and later the surety sold the land under the deed of trust and turned it over to one creditor, held that the deed of trust was given for the benefit of all creditors and that the creditors were entitled to share proportionately in the security.

2. **Principal and surety.**  Where a debtor gives security to its surety as long as the debtor continues to be a going concern the security cannot be foreclosed except at the surety's instance.

   In such a case the creditors would have no right to proceed against the security until they had first exhausted their legal remedies against the

debtor, but if the debtor fails or goes into bankruptcy the creditors become entitled to share in the security.

3. Trusts. **Where property is impressed with a trust to secure creditors and is sold in bad faith the purchaser acquires the property subject to the trust.**

Where a company gave a deed of trust to secure its surety on its notes and then went into bankruptcy and the surety acquired the property without the payment of any money and endeavored to turn it over to one creditor excluding another creditor from participating in the securities, held that the property was acquired in bad faith and was subject to the trust and all creditors were entitled to their proportionate share of the property.

Appeal from Chancery Court, of Hamilton County; Hon. W. B. Garvin, Chancellor.

Affirmed and remanded.

Cantrell, Meacham and Moon, of Chattanooga, for appellant.

Murray & McCalla, of Chattanooga, for appellee.

THOMPSON, J.  The Simplex Battery Company, a corporation, manufactured batteries.  Its plant was located in Alton Park near Chattanooga, and it owned the land, building and certain machinery, equipment, supplies, etc., located therein.  Mr. W. P. Ferguson was the president, and Mr. John R. Evans was the secretary.

In the early part of April, 1920, the Battery Company was indebted to the Hamilton National Bank in a sum slightly in excess of $6,100.  This indebtedness was evidenced by five promissory notes upon which Mr. Ferguson was surety.  It was necessary for the Battery Company to borrow more money, but none of the other officers, directors or stockholders seem to have been willing to endorse or sign as surety for the Battery Company.  Mr. Evans suggested to Mr. Ferguson that the Battery Company execute a deed of trust to secure Mr. Ferguson on his endorsement or rather signature as surety on the notes which the Hamilton National Bank already had, and also upon any other paper which Mr. Ferguson might sign as surety or endorser for the Company, and at a meeting of the Board of Directors such a deed of trust was authorized to be executed.

On April 17, 1920, the Battery Company, by its president and secretary, executed a deed of trust conveying the land, building, equipment, supplies, etc., to the Hamilton Trust & Savings Bank, Trustee. This deed of trust, in stating its purposes, quoted in full the five notes which the Hamilton National Bank held, and which Mr. Ferguson had signed as surety, and contained provisions amply securing Mr. Ferguson on his signature as surety on the five notes and any others which he might thereafter sign as surety for the company, but not to exceed $15,000 at any one time.

Mr. Ferguson advised the Hamilton National Bank of the execution of this deed of trust, and it might be stated here that one of the

controverted questions in the case is whether or not this deed of trust was intended to and in fact did secure the Bank as well as Mr. Ferguson. After its execution the Bank made the Battery Company another loan (a small one) with Mr. Ferguson as surety, and from time to time took renewal notes, with the Battery Company as maker and Ferguson as surety, on all of its loans to the Battery Company.

The Battery Company after the execution of the deed of trust also borrowed money from Mr. C. C. Batey, a brother-in-law of Mr. Ferguson, and executed to him its notes which Mr. Ferguson signed as surety. These several loans from Mr. Batey aggregated almost $15,000.

It is not questioned that all the money borrowed from the Bank and Mr. Batey was used in the business of the company, but it was unable to make money and repay its loans, and in January, 1921, it filed a voluntary petition in bankruptcy in the Federal court at Chattanooga and was duly adjudged a bankrupt. Mr. J. H. McCallum was elected and qualified as Trustee.

The bank first filed its proof of claim, made out by an attorney who was not its regular attorney, in which it was stated that it had no security for its debt except the personal endorsement of Mr. Ferguson. Later, by leave of the court, the bank withdrew said proof of claim and filed another prepared by its regular attorneys, which was the same as the former except it had the added statement that "Ferguson secured by deed of trust to protect himself to the benefit of which claimant (the Bank) is entitled to be subrogated."

In the meantime the Trustee in bankruptcy had filed a petition in the proceedings attacking the deed of trust as fraudulent and void, and prayed that it be set aside. Ferguson and Batey answered this petition. The Bank then filed its petition in the proceeding in which it set out its alleged interest in the deed of trust, and prayed that said interest be declared and that it be allowed to become a party to the Trustee's petition and to file an answer thereto. This petition of the Bank was granted and the following order was entered by the Referee:

"It is ordered that the said petition be filed and granted so as to allow petitioner (the Bank) to become a party to the petition filed by the Trustee attacking the deed of trust, and to allow it to file its answer thereto, and that petitioner be allowed to receive satisfaction of its notes filed as exhibits to its claim out of the proceeds of the sale of the property covered by the deed of trust before other unsecured creditors are paid, if eventually the deed of trust is sustained and the petition of the Trustee attacking the same is dismissed."

The bank then filed an answer to the Trustee's petition, but it does not appear that the bank took any other part in the defense of

the deed of trust. That was done by Ferguson and Batey, and they both incurred expenses and attorneys' fees. On the hearing before the Referee, he sustained the Trustee's petition and ordered the deed of trust set aside, but upon appeal this decision was reversed by Judge Sanford, Federal District Judge, and the deed of trust was sustained as valid.

After the deed of trust was thus sustained, Ferguson filed a petition in the said proceeding and alleged that he was the sole beneficiary under the deed of trust and that he had a lien upon the property covered by it for more than $22,000, which was more than twice what the property was worth, and prayed that the deed of trust be foreclosed and that the property be sold at private sale by the Trustee in Bankruptcy and also prayed the privilege, if he himself should be the highest bidder, of paying for the property without any money and merely by crediting his lien with the amount of his bid, and that in such case possession of the property be turned over to him. The amount mentioned, i. e. $22,000, shows that the Bank's debt (at that time about $6,400) was included by Ferguson in his claim of a lien, etc.

This application of Mr. Ferguson was granted by the Referee on November 10, 1922, with the qualification that if Mr. Ferguson should become the purchaser he should pay in cash an insurance premium of $147.32, due to Grady, Walton & Co., insurance agents.

Under the authority of this order, the Trustee executed a deed conveying the property to Mr. Ferguson for the agreed price of $12,000. This deed was dated November 13, 1922. It does not show how the price of $12,000 was paid, or that it was paid at all, and there is nothing in the record in the bankruptcy proceeding to show that that court undertook to determine how the purchase price i. e. $12,-000 should be applied as between the debts of the Bank and Batey for which Ferguson was surety. Ferguson and Batey testified that the said price was paid by Batey satisfying his notes to the extent of $12,000. When this was done they do not say; whether at the time the trustee in bankruptcy conveyed the property to Ferguson or about a year later, to-wit: September 27, 1923, when Ferguson conveyed the property to Batey.

Ferguson and Batey claim that Ferguson purchased the property from the Trustee in Bankruptcy by prearrangement with Batey, and as his agent and for his benefit, and that the subsequent deed by Ferguson to Batey was made pursuant to said agreement. But, like the Chancellor, we decline to accept their statements as true. Their testimony is confused and unsatisfactory, and we think the true facts appear in the following excerpt from the testimony of Mr. Ferguson:

"Q. 52. Prior to the sale in the bankruptcy court, it was anticipated and understood by you and Mr. Batey, that you were to take title to it in the bankrupt court, was it not? A. We had that agreement, yes.

"Q. 53. That was also evidenced by the fact that you put in the order providing for the sale, that if you became the purchaser at that sale, you should be required to pay $147.52, but no more money, was it not? A. Yes.

"Q. 54. Mr. Batey understood the title was to be taken in your name, did not he? A. We had that agreement, yes.

"Q. 55. And you took title in your name with the intention of disposing of that property, and paying Mr. Batey and paying the Hamilton National Bank what was due them on the notes you had indorsed? A. As much as I could.

"Q. 56. Just what you could? A. Yes.

"Q. 57. And you expected and intended to pay to both of them as much as could have been paid out of the proceeds of that property? A. Depending on what I could dispose of the property for, of course.

"Q. 58. Well, you wanted to sell it for as much as possible? A. Yes.

"Q. 59. And take all that you could realize from the sale of that property and pay as far as it would go on Mr. Batey's debt and on the Hamilton National Bank debt, did not you? A. Yes.

"Q. 60. And you told the Hamilton National Bank officers, that that was the situation, did not you? A. I think so.

"Q. 61. Well, don't you know you did tell them that, several times? A. I have had so many discussions with them, that I do not remember just exactly what passed.

"Q. 62. But, that is your recollection though? A. Yes."

Bates, on cross-examination, testified as follows:

"Q. 12 Were you in Chattanooga at the time this property was bought by Mr. Ferguson from the trustee in bankruptcy? A. Yes, sir.

"Q. 13. Were you present at the sale? A. Yes, sir.

"Q. 14. Why did you not buy that yourself? A. Well, I do not know that I could answer that right straight out.

"Q. 15. There is really not any answer to that, is there? A. I presume there is one if a man knew just exactly what it was.

"Q. 16. You do not know right now what it is? A. Right at present thought, without I had time to sit down and think it over, I do not know that I could recall just exactly."

About the time that Ferguson conveyed this trust property to Batey, he conveyed to Batey all of his other property, which left him without any assets.

The Hamilton National Bank filed its bill in this cause against the Trustee in the deed of trust i. e. Hamilton Trust & Savings Bank; and W. P. Ferguson and C. C. Batey, seeking to subject the property to the payment of its debt.

During the pendency of the cause the property was sold by agreement to a Mr. Gallagher, and from that time on the litigation was of course over the proceeds of this sale. The result of the litigation in the lower court was a decree, in part as follows:

"It is therefore ordered, adjudged and decreed by the Court that the demurrers heretofore filed by the defendants, Batey and Ferguson, be, and the same are hereby overruled; that the defendant Ferguson, is indebted to the Hamilton National Bank in the approximate sum of $6490, interest and attorney's fees, the exact amount of which is to be determined by a reference hereinafter ordered; that the property above described is still impressed with the same trust as that provided in the deed of trust, viz:, to pay the debts, the Bank's debt equally with Batey's approximately $8500; that the property having been sold under an agreed decree, the proceeds of sale shall be held in accordance with the terms of that and this decree and said Batey is enjoined from any further disposal of said proceeds of sale or of the property above described; that complainant have decree against defendant Ferguson for the amount to be ascertained upon the order of reference hereinafter made, with principal, interest and attorney's fees, and the cost of this suit; that the transfer of the property to Batey is fraudulent, null and void as against complainant; that the cause be referred to the clerk and master to hear proof, and report:

1. What were the net proceeds of sale realized by Batey, for the sale of the property above described.

2. What, at the time of bankruptcy, was the principal of the Bank's debt secured by the deed of trust, and what was the principal of Batey's debt within the limit of $15,000.

3. What is the true amount of the Bank's debt, with interest to this date, remaining unpaid, and what is the amount of Batey's debt, falling within the said limit, with interest to this date.

4. What would be a reasonable fee for Batey to have paid for the defense of the deed of trust.

5. What are reasonable solicitors' fees for complainant for services rendered in this cause.

"It is further ordered, adjudged and decreed that the net proceeds of sale of the property to Gallagher by Batey, less the fee found by the Clerk & Master, to be a reasonable fee, for Batey to have paid for the defense of the deed of trust, are to be divided between the

Bank and Batey in proportion to the Bank's debt and interest re-
maining unpaid at this date, and Batey's debt, with interest, falling
within the said limit; that the Master further report whether or not
any sum has been left out of the $1,000 cash retained by Batey out
of the proceeds of the sale, and out of the notes retained by him
under the agreed order, after the payment of taxes and other en-
cumbrances, etc.''

The defendants, Batey and Ferguson have appealed to this court,
and have assigned twenty-four alleged errors. It seems to us that
the following quotation from the opinion of the Chancellor so fully
covers and disposes of the contentions made by the defendants, Batey
and Ferguson, and so correctly disposes of the merits of the case,
that we simply adopt it as our own:

''Upon these facts the first question which arises is whether or not
the deed of trust of April 17, 1920, enured to the benefit of both the
bank and Batey as creditors of the Simplex Battery Company se-
cured by Ferguson. In the case of McRady v. Thomas, 16 Lea, 173,
175 it was said:

''It has been uniformly held, since the case of Breedlove v. Stump,
3 Yerg., 256, that an indemnity or collateral security given by a deb-
tor to his surety, enures to the benefit of the creditor who may sub-
ject it in equity, without a judgment even against the principal
debtor: 2 Cold., 407; 5 Cold., 396; Heis., 530. Such property is a
trust fund for the benefit of the creditor, who has always been held
entitled to proceed directly to have it appropriated, on the principle
that it is provided for the better security of the debt, and this trust
gives a court of equity jurisdiction for its administration.''

''In this case of Breedlove v. Stump, 3 Yerg., 256, the defense was
made as it is in the instant case that the security was for the indem-
nity of the surety and that the creditor had no interest in it. Reply-
ing to this contention the court said:

''Now suppose the fact to be, as established by the defendants in
their answers, that this note was deposited with Sommerville to se-
cure Fletcher against loss, in consequence of his endorsement of the
draft, and for his indemnity, and that Breedlove, Bradford and
Robeson were not contemplated in the arrangement; is it not a prin-
ciple of natural equity, as well as positive law, that the funds of
the debtor shall be applied to the payment of his debts, and would
not a court of equity, under such circumstances, create and enforce
the trust in favor of complainants? Such seems to be the intimation
of the court, in 7th Cranch, 97. They say 'It is settled in this court,
that the person for whose benefit a trust is created, who is to be the
ultimate receiver of the money, may sustain a suit in equity to have
it paid directly to himself.' In this case it must be apparent, that
although the note was deposited with Sommerville for Fletcher's in-

demnity on account of the draft, it was not that he might receive the money, and apply it to his own individual use, but to the payment of the bill, of which he was the indorser, and that, consequently, the complainants were to be the ultimate receivers of the money. In first Equity Cases, Abridged, 93, we find the law laid down in these words: 'A bond creditor shall, in this court, have the benefit of all counter bonds, or collateral security, given by the principal to the surety; and if A owes B money, and he and C are bound for it, and A gives C a mortgage or bond to indemnity him, B shall have the benefit of it to recover his debts.' In II Vesey, 22, the master of the rolls recognizes the principle, that the creditor is entitled to the benefit of all the securities the principal debtor has given to his surety, and that the surety has an equity to the benefit of all the securities the principal gives to the creditor. Questions of this character have frequently come before the courts of the State of New York, where the principles of the commercial law, as well as the law of lien, have been expounded with as much ability and learning as by any other tribunals; and the current of authority there is believed to be uniform. In the case of Moses v. Murgatroyd, 1 John Ch. Rep., 119, Moses was the holder of notes to a considerable amount, executed by (264) Ogden, and endorsed by Murgatroyd; to secure the endorser, Ogden, the maker, had assigned him certain securities as an indemnity; and the object of the bill was to have the benefit of that indemnity. Chancellor Kent (clarum et venerabile nomen) in giving his opinion, says: 'The plaintiffs, as holders of the notes, are entitled to the benefit of this collateral security, given by their principal debtor to his surety. These collateral securities are, in fact, trusts created for the better protection of the debt; and it is the duty of this court to see that they fulfill the design. And whether the plaintiffs were apprised, at the time of the creation of the security, is not material. The trust was created for their benefit, or for the better security of the debt, and when it came to their knowledge, they were entitled to affirm the trust, and to enforce its performance.' "

"The authorities upon this subject are collected in an elaborate note to the case of Johnson v. Martin, L. R. A. 1916 C. 1057.

"I am not prepared to concede that the deed of trust was intended only as indemnity for Ferguson as distinguished from security for the payment of the debts. It is true that as long as the Simplex Company continued to be a going concern, the deed of trust could only be foreclosed at Ferguson's instance, and creditors would have no such right until they had first exhausted their legal remedies against the company. But Ferguson proved unable to finance the company, and it went into bankruptcy and the deed of trust was foreclosed at his request. The deed provides how the trustee shall apply the proceeds, viz: to repay Ferguson any amount he paid for

the company and hold the balance for the purpose of meeting the other indebtedness. The language of the deed, to my mind, shows the purpose to have been not merely to indemnify Ferguson, but to do so by providing a fund with which to pay the debts. In such case the great weight of authority is that the right of the creditor in the security attaches as soon as the security is given.

"There are cases which hold that when the debtor places property in the hands of the surety for his indemnity, the rights of the creditors are only to be worked out through and subject to the rights of the surety. From this it follows that there can be no subrogation or substitution of the creditor, if the surety has surrendered or parted with the security. Cunningham v. Railroad, 156 U. S., 400, and Poole v. Lowe, 24 Colo., 475, are instances of this holding, and our own Supreme Court took the same view in Waller v. Oglesby, 85 Tenn., 301, though it is to be noted that Judges Lurton and Caldwell dissented from the decision in that case. Because of my view, stated above, of the proper construction of the deed of trust, I do not think the present is that kind of case, but suppose it was and let us apply the rule as stated in Waller v. Oglesby, namely, that the security may be surrendered or converted, provided the surety acts in good faith. Ferguson had not paid a dollar of the debts for which he was surety. The Simplex Company was insolvent and had gone into bankruptcy. Ferguson also was insolvent. Not more than about $8,500 of Batey's notes were within the $15,000 limit fixed by the deed of trust. In this situation Ferguson turned the property over to Batey, to the exclusion of the bank, for the release of $12,000 of Batey's notes, of which only about $8,500 was secured by the deed of trust at all. This was not good faith, but distinctly bad faith, and cannot be sustained.

"I am inclined to the opinion that the proceedings in the bankruptcy court by which the property was turned over to Ferguson, being in utter disregard of the terms of the deed of trust, were simply void and left the title in the Hamilton National Bank as trustee, but, assuming that the effect was to pass the title to Ferguson, he took the property impressed with the same trust as that provided in the deed of trust, namely, to pay the debts, the bank's debt equally with Batey's $8,500, and it will be so decreed."

It results that in our opinion there was no error in the decree of the Chancellor, and the cause will be remanded for the purpose of carrying the same into effect. The costs of the appeal will be taxed against W. P. Ferguson and Charles C. Batey, as principals, and John R. Evans, as surety, on the appeal bond.

Portrum and Snodgrass, JJ., concur.